UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:22-cv-203-MOC-WCM

| | |
|---|---|
| SOUR GRAPES, LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| VINUM USA INC., ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on Defendant Vinum USA, Inc.'s Motion for Summary Judgment. (Doc. No. 18).

I. **BACKGROUND**

Plaintiff Sour Grapes sued Defendant Vinum following Vinum's cancellation of a wine distribution agreement between the parties. From 2014 until December 2021, Sour Grapes was the exclusive distributor of Vinum wines in North Carolina. Vinum, a federal wine importer, imported certain wines from Europe. (Depo. of Shchukin, pp. 9, 14). USA Wine Imports, Inc. ("USA Wine"), a non-resident wine vendor for Vinum, would receive the wine and pass it on to wholesalers like Sour Grapes. (Id. p. 34). Sour Grapes then distributed Vinum wine in North Carolina.

The distribution agreement worked like this. Sour Grapes would first send a purchase order to Vinum. Vinum would then, in its discretion, transmit the purchase order to USA Wine for fulfillment. (Depo. of Price, p. 34). Next, USA Wine would submit a release order to its warehouse for the Vinum wine to be released, and the warehouse would issue a release number to Vinum. (Id.). Vinum, in its discretion, would transmit the release number back to USA Wine, which would then send the release number to Sour Grapes. (Id.). Finally, Sour Grapes would

1

take custody of the wine at USA Wine's warehouse for distribution in North Carolina. (Id. at p. 35).

Vinum, not Sour Grapes or USA Wine, controlled this process and could stanch the flow of its wine to North Carolina any time. (Id. at p. 240; Depo. of Shchukin, p. 46). Vinum also dictated the price at which USA Wine sold Vinum wine to wholesalers. (Depo. of Shchukin, pp. 34–35). USA Wine served at the pleasure of Vinum, and Sour Grapes was Vinum's exclusive wholesale distributor in North Carolina. (Depo. of Shchukin, p. 38).

On October 4, 2021, Vinum purported to terminate Sour Grapes' distribution rights. Sour Grapes wrote back, protesting that there was no cause to terminate its partnership with Vinum. Vinum, in response, recognized its historic partnership with Sour Grapes but persisted in terminating its agreement with Sour Grapes. (Ex. A).

In early November 2021, Sour Grapes sent a purchase order for Vinum wine directly to USA Wine. USA Wine rejected the order, explaining that Vinum had terminated USA Wine's authority to sell Vinum wine in North Carolina. (Doc. No. 21).

In February 2022, Sour Grapes learned that Vinum had engaged another wholesaler to distribute its wine in North Carolina in violation of Sour Grapes' exclusive distribution rights. Consequently, Sour Grapes' counsel sent a letter to Vinum notifying it that "reassign[ing] distribution rights in [Vinum] wines…is unlawful." (Doc. No. 1-1, pp. 7, 18, 21–27). Vinum responded through counsel on March 24, 2022. In this letter, Vinum recognized that Sour Grapes' distribution rights could only be terminated "for good cause." (Doc. No. 1-1, pp. 15–16).

Sour Grapes filed this action in Buncombe County Superior Court on August 12, 2022. Sour Grapes brings the following claims against Vinum: (1) unlawful termination of the distribution agreement for failure to give proper notice under the North Carolina Wine

2

Distribution Agreements Act ("the Wine Act"), N.C. GEN. STAT. § 18B-1207(a); (2) unlawful termination without good cause under the Wine Act; (3) unauthorized distribution agreement with another wine wholesaler in sales territory under the Wine Act; and (4) Unfair and Deceptive Trade Practices under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. § 75-1.1 et seq.

On September 21, 2022, Vinum removed to this Court invoking diversity jurisdiction under 28 U.S.C. § 1332. Before answering the Complaint, Vinum's counsel sent a letter dated September 23, 2022, notifying Sour Grapes that Vinum was terminating its distribution agreement "for good cause." In the letter, Vinum invoked the Wine Act's termination process and stated it was terminating its distribution agreement with Sour Grapes through the due process reserved to a "winery." Vinum further denied being a "winery" and stated, "to the extent Vinum may be the successor in interest to any 'distribution agreement in effect' for the Vinum wine that were previously sold by winery USA Wine Imports, per G.S. 18B-1213, this termination is applicable." (Doc. No. 21, pp. 36–37).

Pursuant to the 90-day process set forth in N.C. GEN. STAT. § 18B-1205 as referenced in Vinum's September 23 letter, Sour Grapes initiated an administrative proceeding before the North Carolina ABC Commission ("NCABCC") to contest Vinum's attempted termination of its rights. Vinum's sole argument before the NCABCC was that it is not a "winery" and hence not subject to the Wine Act.

On December 7, 2023, a hearing officer from the NCABCC found that Vinum is not a "winery" and thus not subject to the Wine Act. See (Doc. No. 32). In its pending summary judgment motion, Vinum asks this Court to consider the same question. Sour Grapes opposes Vinum's motion. Sour Grapes argues that this Court should abstain and allow the NCABCC or

North Carolina State Courts to decide whether Vinum is a winery. The Court held a hearing on the summary judgment motion on January 16, 2024. This matter is now ripe for disposition.

II. DISCUSSION

The U.S. Supreme Court has long held that in certain disputes involving questions of state law, federal courts should "restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 718 (1996) (quoting Railroad Comm'n of Tex. v. Pullman Co., 312 U.S. 496, 500–01 (1941)). Drawing on principles of comity and federalism, the Supreme Court recognizes various circumstances in which a federal court should abstain from exercising its jurisdiction over a dispute. Such circumstances are present here.

Colorado River abstention is justified when a parallel state court proceeding exists and "exceptional circumstances" warrant abstention. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976); see Gannett Co. v. Clark Constr. Group, Inc., 286 F.3d 737, 741 (2002). "Without establishing a rigid test, the Supreme Court has recognized several factors that are relevant in determining whether a particular case presents such exceptional circumstances: (1) jurisdiction over the property; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal law is implicated; and (6) whether the state court proceedings are adequate to protect the parties' rights." Gannett Co., 286 F.3d at 741 (citing Colorado River, 424 U.S. at 818).

Here, an NCABCC hearing officer recently ruled on the exact issue before this Court. The administrative agency's decision is appealable. Accordingly, the existence of the NCABCC

4

Case 1:22-cv-00203-MOC-WCM   Document 34   Filed 02/12/24   Page 4 of 8

proceeding cuts in favor of abstention.

The advanced posture of the parallel administrative proceeding constitutes an extraordinary circumstance warranting abstention.

The pending parallel NCABC proceeding likewise incites the risk of piecemeal litigation contemplated in the third Colorado River factor. The threat of "disfavored" piecemeal litigation which "occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." United States ex rel. Lutz. v. United States, 853 F.3d 131, 140 (4th Cir. 2017); Gannett Co. v. Clark Constr. Group, Inc., 286 F.3d 737, 744 (4th Cir. 2002) (quoting American Int'l Underwriters, Inc. v. Continental Ins. Co., 843 F.2d 1253, 1258 (9th Cir. 1988)). Consistent with the federalism principles underlying abstention, "Colorado River's progeny reveal[] that courts generally accord this factor greatest weight." Russo v. Eastwood Constr. Partners, LLC, 2021 U.S. Dist. LEXIS 51188, at **14–15 (D.S.C. Mar. 18. 2021).

The nature and status of the NCABCC proceeding establishes a plain risk of piecemeal litigation that counsels against the Court's adjudication of this matter. Application of the term "winery" as defined in the Wine Act is an issue of first impression. A decision by this Court could result in two contradictory rulings on an identical, dispositive question. Given the lack of precedent or guidance on this threshold question of statutory interpretation, the risk of inconsistent interpretations and dispositions is especially pronounced.

Further, one or both rulings would likely precipitate concurrent (and thus inefficient) state and federal court litigation. Regardless of either tribunal's decision or any conflict therein, the non-prevailing party could appeal an adverse ruling to the respective federal and state appellate courts. The novel question of statutory interpretation presented here "is particularly ill-suited for resolution in duplicate forums," and the risk of piecemeal litigation thus counsels in

5

favor of abstention pursuant to the third Colorado River factor. Gannett Co., 286 F.3d at 744.

The fifth Colorado River factor justifies abstention because this action does not implicate issues of federal law.

The sixth Colorado River factor disfavors this Court's exercise of jurisdiction for similar reasons. North Carolina's Administrative Procedure Act prescribes comprehensive procedures for the review and appeal of NCABCC matters. See N.C. GEN. STAT. §§ 150B-43, 150B-45. The parties may therefore adequately protect their rights in that forum.

For the foregoing reasons, the Court will abstain from resolving Vinum's summary judgment motion under the Colorado River doctrine. See North Carolina Life & Accident & Health Ins. Guar. Ass'n v. Alcatel, 876 F. Supp. 748, 755 (E.D.N.C. 1995) (stating that "[t]he proceedings before the NCDOI and this court involve substantially the same parties and issues").

The Court further notes that, in the alternative, Burford abstention doctrine also applies to this case. A court should exercise abstention pursuant to Burford v. Sun Oil Co., 319 U.S. 315 (1943) when: (1) the issues entail "difficult questions of state law bearing on policy problems of substantial import whose importance transcends the result in the case at bar"; or (2) "the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989).

As to the first standard, this matter involves a novel question of North Carolina alcohol law that will affect the wine industry at large. In addition, the resolution of this issue involves significant state policy concerns, as the Twenty-First Amendment to the United States Constitution recognizes that every State possesses an interest in "choosing the alcohol-related public health and safety measures that its citizens find desirable," Tenn. Wine & Spirits Retailers

Ass'n v. Thomas, 139 S. Ct. 2449, 2457 (2019). Thus, the North Carolina General Assembly has "consistently remained committed to" maintaining its ABC regulatory scheme. B-21 Wines, Inc. v. Bauer, 36 F.4th 214, 219 (2022). Accordingly, the unprecedented and consequential nature of the central question in Vinum's motion warrants abstention under the first Burford standard. See Alcatel, 876 F. Supp. at 755 ("A decision on these coverage issues by this court would require an interpretation of North Carolina statutes involving issues that neither the NCDOI nor a North Carolina court has yet decided…[that are]… of substantial importance to the public").

The second Burford standard is also satisfied. The importation and distribution regime set forth in the Wine Act constitutes a "highly regulated three-tiered structure," and reflects North Carolina's exercise of police power to protect public health, safety, and morals. Beskind v. Easley, 325 F.3d 506, 509 (4th Cir. 2003). The Wine Act thus demonstrates North Carolina's effort "to establish a coherent policy with respect to a matter of substantial public concern," a fundamental aspect of which the parties' dispute calls into question. New Orleans Pub. Serv., Inc., 491 U.S. at 361. Thus, the Court's interpretation of the term "winery" would disrupt North Carolina's maintenance and development of the policies codified in the Wine Act. The Court will therefore alternatively abstain from resolving this issue under Burford.

Finally, the Court will alternatively refrain from deciding this matter pursuant to the abstention doctrine announced in Louisiana Power & Light Co. v. City of Thibodaux. "Thibodaux abstention is appropriate in diversity cases where: (1) state law is unsettled, and (2) an incorrect federal decision might embarrass or disrupt significant state policies." Whitmire v. Southern Farm Bureau Life Ins. Co., 538 F. Supp. 3d 591, 598 (E.D.N.C. 2021) (citing Nature Conservancy v. Machipongo Club, Inc., 579 F.2d 873, 875 (4th Cir.) (per curiam), cert. denied, 439 U.S. 1047, (1978)). For each of the reasons discussed as to Colorado River and Burford

abstention, this Court's resolution of the unsettled "winery" issue would "embarrass or disrupt" North Carolina's wine importation and distribution policies. Id. The Court will, therefore, also abstain from resolving the Wine Act interpretation question pursuant to Thibodaux abstention. See Machipongo, 579 F.2d at 875–76.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary (Doc. No. 18) is **DENIED**. Furthermore, the Court finds that abstention is proper. The Court will **STAY** this matter until the issue pending before the North Carolina agencies and/or state courts make a final determination on the interpretation of the term "winery" in the Wine Act as it affects this matter. The parties shall notify the Court when this matter is ultimately decided by the North Carolina state agencies and/or courts.

Signed: February 12, 2024

Max O. Cogburn Jr
United States District Judge